# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
June 19, 2012 Session

## STATE OF TENNESSEE v. GREGORY G. SPICELAND

**Direct Appeal from the Circuit Court for Stewart County**
**No. 4-2011-CR-09     Robert Burch, Judge**

---

**No. M2011-01196-CCA-R3-CD - Filed February 15, 2013**

---

Following a jury trial, Defendant, Gregory G. Spiceland, was convicted of one count of initiating the process to manufacture methamphetamine and one count of promotion of methamphetamine manufacture. Following a sentencing hearing, the trial court sentenced Defendant to eight years and two years respectively for his convictions, and the sentences were ordered to run concurrently. Defendant was ordered to serve a sentence of split confinement with one year of his effective sentence in confinement and the remainder suspended on probation. In this direct appeal, Defendant contends that the trial court erred by ordering a sentence of split confinement. Specifically, Defendant argues that the trial court should not have found that Defendant was engaged in a pattern of criminal conduct and that Defendant's failure to complete his presentence report indicated that Defendant would not be successful on probation. Defendant also contends that the trial court erred by not ordering Defendant to serve his sentence on community corrections. Following a review of the record, we find that the trial court abused its discretion by ordering Defendant to serve a full year of his sentence by incarceration. We therefore reverse Defendant's sentence and modify it so that Defendant serves 30 days of his sentence in confinement with the balance of his effective sentence served on probation, and remand to the trial court for entry of a judgment in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Case Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M TIPTON, P.J. and JOHN EVERETT WILLIAMS, J., joined.

Gregory G. Spiceland, *Pro Se*.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; and Dan Mitchum Alsobrooks, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

Drug task force agent Scott Templon testified that on April 10, 2008, he conducted a controlled buy through a confidential informant ("CI"). Agent Templon testified that the CI was compensated $100 for each controlled buy and that he had been working as a CI for approximately five years. The CI was provided with a recording device and $40.00 to purchase one-half gram of methamphetamine from Defendant. Agent Templon searched the CI's person and vehicle for weapons, cash or contraband and found none. Agent Templon followed the CI to the area of the 49 Market in Stewart County. Agent Templon observed the CI pull into Defendant's driveway off Long Creek Road. Agent Templon later met with the CI, who stated that he had purchased methamphetamine from Gary Osborne. The substance, which later tested to be 0.2 grams of methamphetamine, was packaged in foil. Agent Templon testified that the audio recording of the transaction, which was played for the jury, indicated that Mr. Osborne brought Defendant "several baggies containing powder in them or residue [which] was at the final stage of methamphetamine production."

Agent Templon testified that the CI had been to Defendant's residence on two prior occasions, but those did not result in purchases and that the CI had not been provided any money with which to purchase drugs on those occasions. On cross-examination, Agent Templon acknowledged that the substance could have come "straight from Osborne without [Defendant] even having any contact" with it. He also acknowledged that Defendant had never been previously convicted of any drug offenses. He testified that Defendant was targeted because law enforcement "had received numerous reports from citizens." He testified that he and Agent Crawley "received numerous complaints from citizens of large amounts of traffic in and out of [Defendant's] residence, odors coming from the farm area, chemical odors."

The CI testified that after he arrived at Defendant's residence, they talked outside Defendant's house about cars and car parts while they waited for Gary Osborne to arrive. After Osborne arrived, they went inside the house, and Defendant and Osborne were cooking methamphetamine in the microwave. The CI testified that Defendant and Osborne poured a liquid onto plates and placed them in the microwave and then scraped a powdery residue from the plates onto foil or cellophane. The CI went outside to get rolling papers. He testified that he wanted to go outside because he was afraid of a possible explosion. He

-2-

rolled a cigarette with the rolling papers "so it looked like a joint." Defendant came outside "to get [the CI] to come downstairs to smoke with them." The CI refused and started his car as if he "was getting ready to go ahead and leave." He testified that Defendant and Osborne came outside again, and Osborne sold the CI the methamphetamine while Defendant stood "just on the other side [of the CI's vehicle] watching." The CI testified that he had been to Defendant's residence on two or three prior occasions and that he had not purchased drugs on those occasions. He testified "[Defendant] always made promises that never came true."

Agent Brett Trotter, a forensic scientist with the Tennessee Bureau of Investigation, testified that he analyzed the substance obtained from the CI, and concluded that it was 0.2 grams of a substance containing methamphetamine.

Defendant testified that the CI "just showed up at the farm one day" while Defendant was "working on something." He testified that the CI "acted sort of odd." He testified that the CI was "just talking about his buddies [and] drugs. . . ." He testified that on the date of the incident, "Osborne came in with a white substance already in some bagges [sic] - white powdery substance" and that Osborne told Defendant to "go along with me on this." Defendant believed that Osborne was making something that would give the CI diarrhea. Defendant denied knowing that the substance was methamphetamine. Defendant testified that he suspected that the CI's vehicle was stolen, and he asked the CI to "come in and smoke something" in order to "get him away from his truck" so Defendant could get the serial numbers from the CI's truck. Defendant denied any involvement in the production or sale of methamphetamine.

*Sentencing hearing*

At the sentencing hearing, Deborah Vance, a board of probation and parole officer, testified that she prepared the presentence report. She testified that she scheduled an appointment with Defendant to review the answers to a written questionnaire that Defendant was supposed to complete and also to conduct a personal interview with Defendant. This appointment was scheduled for October 12, 2010. Ms. Vance testified that Defendant called an hour prior to the appointment and stated that he did not have the questionnaire because he had given it to his attorney to review. She testified that Defendant called her again, approximately the first of December, and stated he still did not have the questionnaire. Ms. Vance was unable to schedule another appointment with Defendant. She did not testify as to why she could not set up another appointment with Defendant prior to the sentencing hearing on February 8, 2011. She testified that she was unable to contact him again. She obtained a telephone number he had given to his bondsman, and she called it one time. Defendant did not answer and there was a message that voice mail had not been set up. The

questionnaire requested information about Defendant's background, family history, and education and was important to the preparation of the presentence report.

Ms. Vance obtained Defendant's criminal record and learned that Defendant had one prior conviction in Stewart County in June, 2007, for allowing an unlicensed driver to drive his vehicle. Defendant had other criminal charges that did not result in convictions. Defendant also had a pending charge for possession of drug paraphernalia in Stewart County at the time of sentencing. Ms. Vance did not offer a recommendation on sentencing because she believed the information contained in the presentence report was insufficient without the questionnaire and personal interview. Ms. Vance acknowledged on cross-examination that she did not attempt to contact Defendant's attorney to obtain a valid telephone number for Defendant in order to contact Defendant.

Defendant's daughter Jennifer Bogart testified for Defendant. She testified that she was a speech and language pathologist and her husband was a business and finance director for the Stewart County Board of Education. Ms. Bogart testified that she had two children, and that Defendant was a "[v]ery caring" and involved grandfather. Defendant read and watched movies with his grandchildren, and they went to Defendant's farm and rode tractors. She testified that Defendant spends time with his grandchildren "[a]t least on a weekly basis" and that he attended her son's school activities and sports activities. Ms. Bogart testified that Defendant's mother had dementia and that Defendant provided care for her and assisted with some of her daily activities.

Heather Stephens, Defendant's other daughter, testified that she was married and had two children. She testified that her children's relationship with Defendant was "very good" and that Defendant interacted with them "on a regular basis[,]" attending their sports events. Ms. Stephens testified that Defendant's removal from her children's lives would have a negative impact on them. She also testified that Defendant provided care for his mother. Ms. Stephens was surprised by Defendant's criminal charges.

Defendant testified that he had been caring for his mother for three or four years and that her health had declined in the past year. Defendant testified that he encouraged his mother to eat and take medication, and that he drove her places and did maintenance on her house. Defendant testified that he had a close relationship with all of his grandchildren and that he "spen[t] a lot of time" with them. Defendant explained that he offered to reschedule the appointment with Ms. Vance and that he did not intend to evade her attempts to contact him.

At the conclusion of the sentencing hearing, the trial court stated that it had considered the presentence report, which the court noted was "somewhat incomplete due to

-4-

[Defendant]'s failure to cooperate," and the trial court considered the testimony presented at the hearing and at the trial. The trial court also stated that it considered the principles of sentencing and found that no enhancement or mitigating factors existed and imposed the minimum sentences of eight years for Defendant's manufacturing methamphetamine conviction, a Class B felony, and two years for his promotion of methamphetamine conviction, a Class D felony. The trial court ordered that the sentences be served concurrently. The trial court found that Defendant was a favorable candidate for probation and made the following findings and conclusions with regard to probation:

The Court has considered the pre-sentence report. There is no information before the Court on the defendant's physical, mental condition or social history. The Court must then find that it is unremarkable in that respect.

The facts and circumstances surrounding this offense obviously the Court took this into account and takes this into account in determining probation that the circumstances that were proved at the trial indicated that this was not a[n] isolated incident but a regular course of conduct on behalf of the defendant; and the defendant has been proved to be engaged in one instance but the proof was indicative that it was, as I say, a regular activity.

The prior criminal history of the defendant is essentially none. There's no reason even to mention this misdemeanor and so forth, so as far as I am concerned it is zero.

Previous actions and character of the defendant, nothing remarkable has been introduced in the proof other than the fact that he - the proof is that he takes care of his family.

Whether or not the defendant might be reasonably expected to be rehabilitated evidencing the potential or lack of potential for rehabilitation including the risk during the period of probation the defendant will commit another crime. There's really no proof there. I can't make any findings one way or the other as to whether this defendant has the potential for rehabilitation and whether or not the defendant – it reasonably appears that the defendant will abide by the terms of probation.

The only proof I have before me is that the one task he was given to do, he didn't do it. He failed to show up for his pre-sentence investigation

-5-

and continued to apparently avoid meeting. This is a really bad sign. It indicates to me that he will not be successful on probation.

The defendant here [is] loaded up with excuses and short on performance. He said, you know, well I called and I left my number on the answering machine. [Defendant], this morning I ordered a man to be in court today and he didn't have transportation and he lives in Dickson, seven miles away. He walked and he was here on time and it was cold and it was snowing, but he made it. That's what I expect of somebody on probation and you have not shown me.

I just don't think based on this proof that I've heard and it is sparse proof because again the defendant didn't help us out here by giving us any pre-sentence information that [Defendant] has not yet learned with regard to probation who is in charge. I think he needs jail time in order to learn that lesson.

The next factor is whether or not the interest of society will be protected from possible future criminal conduct of the defendant are great. I can't tell whether there's any possibility of future criminal conduct here or not. The fact that he is not showing me much on probation does not allow me to find that he would not be.

Whether or not measures less restrictive than confinement are frequently or recently been applied unsuccessfully to the defendant. There's no proof that he's ever been on probation. I'm guessing it could be on that driving thing but if it was, it was hardly, you know, not anything to speak of, so we are not going to hold that against him.

Whether or not a sentence of full probation would unduly depreciate the seriousness of the offense. Yes, but I can't find that to be a factor because in this type of case of dealing in drugs the – that would be true in every case and if that were true in every case the statute – the Legislature would have put that in the statute. There is no proof before the Court concerning being unduly depreciated; but it is a, you know, fact that he is involved in the – essentially the drug trade is – certainly doesn't habilitate [sic] in favor of probation.

Whether or not confinement is particularly suited to provide an [e]ffective deterrent to others likely to commit similar offenses, no proof of that.

Whether the offense was particularly enormous or gross or heinous. It puts me in the position of ruling that a, you know, selling or being involved in the trade of methamphetamine is not particularly gross, enormous or heinous. I guess I see the damage that it causes and it is difficult for me; but I think from a legal standpoint I cannot find that to be the case.

That being the case the Court is of the opinion that the defendant's sentence should be suspended after the service of one year, split confinement.

*Analysis*

On appeal, Defendant asserts that the trial court erred by denying his request for full probation. Specifically, Defendant asserts that there was no proof to support the trial court's finding that the offense was not an isolated event, and that the trial court improperly considered his lack of cooperation in determining whether Defendant would be successful on probation. The State responds that the trial court properly exercised its discretion in ordering confinement.

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Susan Renee Bise*, 380 S.W.3d 682 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-5-01 (2010), Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Recently, our supreme court held that the same abuse of discretion standard should be applied to the manner of service of a sentence, which includes the grant or denial of probation. *State v. Christine Caudle*, ___ S.W.3d ___, 2012 WL 5907374 (Tenn., Nov. 27, 2012). When determining if confinement is appropriate, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the

-7-

seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2010 Repl.). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. §§ 40-35-103(5) (2010 Repl.), -210(b)(5) (2010 Repl.); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4). The burden of demonstrating the suitability for full probation rests with the defendant. Tenn. Code Ann. § 40-35-303(b) (2010 Repl.).

Defendant asserts that there was no evidence presented at trial or at the sentencing hearing to support the trial court's finding that the incident for which Defendant was convicted was not an isolated event. We agree. In its brief, the State is silent on this assertion other than to acknowledge what the trial court stated. If anything, the record shows that this was, in fact, an isolated event. Defendant had no prior drug related convictions, and the CI testified at trial that on the two occasions he visited Defendant's farm prior to the incident for which Defendant was convicted, he did not purchase methamphetamine from Defendant or witness Defendant in any way involved in the production or manufacture of methamphetamine. Regarding the prior visits, the CI testified only that Defendant "made promises that never came true[,]" but he did not state what those "promises" were.

In the present case, the trial court relied on Defendant's failure to complete his pre-sentence report as indicative that Defendant would not be successful on probation. Defendant cites *State v. Richard Ricardo King*, No. 01C01-9603-CR-00113, 1997 WL 71837 (Tenn. Crim. App., at Nashville, filed Feb. 20, 1997), *no perm. app. filed*, and argues that a defendant's failure to comply with presentence requirements is not a proper basis on which to find that the defendant has a history of unwillingness to comply with the conditions of probation. In that case, a panel of this court held that the trial court incorrectly applied the enhancement factor that the defendant had shown an unwillingness to comply with the conditions of release into the community, Tenn. Code Ann. § 40-35-114(8), where the defendant had failed to appear in court on the charges for which he was convicted. This court held that "[p]re-trial bail is not a 'sentence.' Accordingly, the trial court erred in relying upon appellant's failure to appear on the subject charges as an enhancement factor." *Id*. at *2.

The decision in *State v. King* did not involve the trial court's denial of probation, but rather the trial court's application of an enhancement factor that this court determined was "questionable." A defendant's cooperation in completing a pre-sentence report is not a

sentence or a condition of a sentence, and therefore would not be an enhancement factor. However, as the State argues, the trial court did not find any enhancement factors. Uncontradicted proof that a defendant refused to cooperate at all with a probation officer's request for personal information to include in a pre-sentence report can be evidence of future problems in serving a sentence on probation. However, in this case, Defendant testified at the sentencing hearing but neither the State nor the trial court asked Defendant for the information which had been sought by the probation officer prior to the hearing. Defendant's testimony included the statement that the probation officer told him, "I [do] not have any more time to bring you in between now and the sentencing. I've got a real big month ahead of me and Christmas coming up and I can't get you in." This is consistent with the probation officer's testimony that she last spoke with Defendant when he called her around the first week of December, 2010, and she told him that she was unable to see him before the sentencing hearing, which was held on February 8, 2011. Defendant also testified that he went to the probation officer assigned to Stewart County and discussed the problem he was having getting the information to the probation officer from Montgomery County who was assigned his case. This testimony was not rebutted by the State.

The trial court's detailed findings of fact reflect that every statutory consideration favored probation, except for the lack of a completed pre-sentence report, for which the trial court placed the entire blame on Defendant. Our review of the uncontradicted evidence at the sentencing hearing points to the conclusion that the failure to have a completed pre-sentence report cannot be laid entirely upon Defendant, and certainly the evidence fails to show that Defendant refused to cooperate. After all, the trial court granted probation, albeit in the form of split confinement. The trial court summarized its conclusion that Defendant, although entitled to probation, needed jail time because Defendant had not learned "who is in charge." Specifically, the trial court stated,

> I just don't think based on this proof that I've heard and it is sparse proof because again the defendant didn't help us out here by giving us any pre-sentence information that [Defendant] has not yet learned with regard to probation who is in charge. I think he needs jail time in order to learn that lesson.

In *Caudle*, our supreme court held,

> that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence.

*Caudle*, 2012 WL 5907374 at *5.

Imposition of one year of confinement in a split confinement sentence of eight years in order to teach a lesson of "who is in charge" with regard to probation, when all other factors weigh firmly in favor of probation, does not pass the *Caudle* test for affirmance. In essence the trial court concluded that Defendant needed some "shock time" in jail, and with this, we cannot disagree. However, shock time under these circumstances is satisfied by 30 days in jail.

Finally, Defendant asserts that he should have been allowed to serve his sentence on community corrections. The Community Corrections Act of 1985 establishes a community based alternative to incarceration for certain offenders and sets out the minimum eligibility requirements. Tenn. Code Ann. §§ 40-36-101 through -306. This Act does not provide that all offenders who meet the standards are entitled to such relief. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Although a trial court must consider all forms of punishment in sentencing a defendant, in this case, Defendant did not request a sentence pursuant to the Community Corrections Act or present any proof at the sentencing hearing as to why he should be sentenced to community corrections.

Defendant's argument on the issue, as asserted in his brief, is as follows:

> While fundamental justice under the sentencing act makes [Defendant] an ideal case for probation, the judge did not even discuss the possibility of Community Corrections. As opposed to incarceration, Community Corrections is less restrictive alternative that is more just for the seriousness of the offense and places less of an economic burden on the citizens of this state.

We are not persuaded by Defendant's argument. Defendant is not entitled to relief on this issue.

## CONCLUSION

We reverse and modify the sentence to split confinement with 30 days in jail and the balance on probation, and remand to the trial court for entry of a judgment in accordance with this opinion.

_____
THOMAS T. WOODALL, JUDGE

-10-